O’Gorman, J.
Guzman Blanco, being an envoy extraordinary and minister plenipotentiary, duly accredited, from Venezuela to France, and recognized as such by the government of the United. States, and while in the city of New York, waiting to take early means of con *583 veyance from this city to France, was served with a summons in this action. Failing to make any appearance in the action, judgment was recovered against him for the sum of $2,194,536.
A motion is now made to set aside the judgment, and vacate the service of summons upon him, on the ground that he was, when so served, an ambassador, and as such, not amenable to any civil suit brought against him in this city or state.
It is conceded for the purposes of this motion that he could not lawfully have been arrested, while thus in the city of New York, and this concession is in accordance with the judgment of this court in Holbrook v. Henderson, 4 Sand. Super. Ct. 626. The court there, however, went farther, and expressed the opinion that the privilege of an ambassador extended to immunity against att civil suits sought to be instituted against him in the courts of the country to which he was accredited, as well as in those of a friendly country through which he was passing on his way to the scene of his diplomatic labors, and to this privilege, the learned court held that he was entitled, as representative of his sovereign, and also because it was necessary for his free and unimpeded exercise of his diplomatic duties.
This opinion of the Superior Court is in accord with that of Wheaton, as set forth in his book on the Law of Nations, in which he has collected and condensed the views of numerous jurists of recognized authority on the subject. Wheaton’s Law of Nations, page 240, et seq.
This rule of international law derives support from . the legal fiction, that an ambassador is not an inhabitant of the country to which he is accredited, but of the country of his origin and whose sovereign he represents, and within whose territory he, in contemplation of law, always abides.
When, therefore, a claim is made against him in the country to which he is sent, for payment of a debt incurred by him, the creditor must proceed against him *584 exactly as if he were not resident there, and as if he had not contracted the debt there, and as if he had no property there, in his quality of ambassador. Wheaton's Law of Nations, page 242.
If he has contracted debts, and has no real property in the country to which he is sent, he should be requested to make payment, and, in case of refusal, application should be made to his sovereign; and as a necessary consequence of this rule of extra-territorial residence, he is always considered as retaining his original domicil, and may be proceeded against in the competent court of his own country, and he cannot set up the plea of absence in the service of the State as a bar to a suit in the domestic forum, since the law supposes him still to be present there.
From these views, I am led to the conclusion that the service made on Guzman Blanco in this case, and the judgment entered against him, are of no force and void.
■ The fact, rather suggested than positively averred in the complaint, that he was connected as a partner in a mercantile business in New York, is not material.
It does not appear that the cause of action arose out of that mercantile relation, or business, or out of any contract or transaction which arose in the state of New York, or the United States.
The motion to vacate the judgment against Guzman Blanco, and to set aside the service of the summons-upon him, is granted, with ten dollars costs.
W. M. Safford, for appellant, argued :—
The precise question now involved has never been judicially determined. The precise question is: “Can an ambassador be sued, by service of summons, in other words, cited to appear, and if so cited, there being no capias, or attachment, may he plead his privilege ? ” The doctrine in regard to civil suits which for the present immediately concerns us, is thus stated by *585 Blackstone: Cooley’s ed., vol. 1, p. 254. “ In respect to civil suits, all the foreign jurists agree that neither an ambassador, nor any of his train or comités, can be prosecuted, for any debt or contract in the court of that kingdom wherein he is sent to reside.” Coke maintained this to be the law: “ If an ambassador makes a contract which is good jure gentium he should answer for it here.” 4 Coke’s Institutes, p. 153. That such ambassador cannot be arrested or his personal chattels attached is conceded. Dryson v. Pichou, 4 Dallas, 321; Holbrook v. Henderson, 4 Sandf. 619. This privilege extends to his domestic servants. Kent Commentaries, vol. 1, § 39 et seq.
It may also for-the purposes of this argument be conceded, though the concession is broader than adjudicated cases, or the best text-writers warrant, that “ an ambassador is deemed to be under the protection of the law of nations in his passage through the territories of a third and friendly power, while upon his public mission in going to and returning from the government to which he is deputed. To arrest him under such circumstances would be a breach of his privileges as a public minister.” Kent, vol. 1, § 39. The foregoing language is as broad, nay broader than any adjudicated case warrants. It is the language of Chancellor Kent. . The doctrine of extra - territoriality, as it is called, admits of several exceptions. Says Wharton in his Digest of International Law, vol. 1, section 93a: “ The prevalent view so far as concerns civil process, is that the doctrine of extraterritoriality does not apply.” In cases where the ambassador engages in trade and the suit is brought in respect to such trading engagements. Wharton’s Digest of International Law, vol. 1, §§ 92 and 93; Grotius, Boole II., ed. 18, § 5, says: “ The obligation to protect ambassadors extends only to the power to whom the embassy is sent, and does not extend to a third power.” All text-writers agree to the following proposition: “ If an ambassador be concerned in trade, his property in *586 that trade is liable to seizure as in the case of any individual.” Bynkershock De Pro. Legal, C. 14; Vattel, B. 4, C. 8. Valarino v. Thompson, 3 Selden (7 N. Y.,) 576, has no application. It turned on a question of jurisdiction of the state courts in a suit against a counsel.
Mr. Fish, while Secretary of State, expressed tersely the tendency of modern thought and modern opinion. In respect to the doctrine of absolute immunity he says:
“ The tendency of opinion in regard to immunities of diplomatic agents is believed to be strongly toward restricting them to whatever may be indispensable to enable the agents to discharge their duties with convenience and safety. The extreme doctrine of immunity which was the necessity of an age of barbarism, and of the intercourse of uncivilized nations has happily yielded to the progress of Christianity and modern culture.” Fish to Jay, 1874; Wheaton's Digest, § 94 and seq. Taylor v. Best and others, 14 C. B., page 487, is a case which when rightly considered sustains our view. It is, moreover, a very instructive case worthy of careful perusal.
Since this case was argued at special term, the case ■ of the New Chili Gold Mining Company against Blanco (same defendant), has been decided by the High Court of Justice, Queens Bench Division.
The learned counsel set forth fully the case and the views of counsel and the judgment therein; and it appearing therefrom that the order directing service upon Guzman Blanco in Paris should be discharged.
John E. Bisley for respondent, argued :—
I. Under the law of nations the service of the summons on the defendant was void, because he was then the sovereign of a nation with whom we were at peace, and was passing through our territory under permission both express and implied. The principles of international law applicable to this case are very fully discussed in Exchange v. McFadden, 7 Cranch. 121.
*587 II. The service was void because defendant was a diplomatic agent of Venezuela to the United States. The authorities are gathered and carefully analyzed in a note under the case of U. S. v. Ortega, Book 6, U. S. Supreme Court Reports, published by the Lawyers’ Cooperative Publishing Co., bottom page, 522. Wheaton’s International Lato, §§ 225, 226, 2d English edition.
III. The service was void because defendant was an ambassador of one sovereign state to another passing through our territory in the execution of his duties when it was had. This question was so fully and so ably discussed by some of the most eminent judges who ever sat in this court, in the case of Holbrook v. Henderson, 4 Sand. 619, that I deem it superfluous to do more than call the attention of the court to that case. It was decided in 1830, and has ever since been followed as the law in this country. See Kents Commentaries, 11th ed. vol. 1, p. 45 and note C. Also, Wharton’s International Law Digest, vol. 1, § 92, p. 638, et seq. At page 646, Holbrook v. Henderson, is cited: “ A diplomatic agent, traveling on his way to the country to which he is accredited, through a third country, pursuing for this purpose a natural ¿md proper route, is entitled to the same privilege as when traveling through the country to which he is accredited.” Whartons International Law Digest, vol. 1, 655. See also Wheaton’s International Law, 2d English edition, §§ 224, 5-7.
“ A public minister, proceeding to his destined post in time of peace, requires no other protection than a passport from his own government.” (Wheaton, supra, § 220.)
Per Curiam.
Order affirmed with $10 costs, for the reasons assigned by Judge O’Gorman for granting the motion.